May it please the court, my name is Chris Taub from the Maine Attorney General's Office and with me is Assistant Attorney General Leanne Robin. With the court's permission I'd like to reserve three minutes for rebuttal. Yes, you may have it. It can't possibly be the case that the state of Maine could not pass a law making it unlawful to intentionally interfere with the delivery of health care. And if that's the case, if the state could pass... I'm sorry, counsel, but you didn't exactly do that. And if you had simply done that, there would be another type of litigation. You made it turn on an intent requirement in the end rather than an objective test. So, you want to tell us why that's okay? Well, the intent requirement is there because we're trying to target the very narrow... I mean, really what this provision does is it singles out the ways that people could attempt to interfere with medical care, whether it's tying up the phone lines, obstructing the entrances, putting out a smoke bomb or using noise. And it's not just any noise that where people are, as in the video of Mr. Ingalls, directly shouting up to women in the window saying, I can see you, I can see what you're doing, don't go through with that, come down here. So, that kind of noise, targeted noise, or noise, intentionally making noise that can be heard within a building, you're saying that noise is disruptive? Yes. Just that noise? And if that's right, then what you're saying is the way the statute really reads, even though the other side has suggested otherwise, it's really as if it's saying you can't make disruptive noise. And when you intend to be making disruptive noise, and if that's the case, it's no problem because that's just a willfulness requirement like there was in Greenland. Is that the idea? Yes. And just to be clear, because I may have misunderstood your question initially, the idea behind the statute is it's not that all noise is disruptive. For example, a global warming demonstration going on at Monument Square, or police sirens going by, that noise is not as disruptive as people making noise intentionally trying to interfere with what's going on upstairs. You just said two different things, and that's the problem, and I just really think I've got to understand that. One possibility is that noise is disruptive in the state's view if you're intentionally making it so that it can be heard inside. That's different than intending to disrupt a health service. Do you follow? Yes, I do. So, is it the first? If it's the first, then to me it looks like the second thing, the first is just performing the function of willfulness requirements. Here's something that's disruptive. We want to make sure you really intended it to be disruptive. And it just happens that rather than writing it out as, this is disruptive noise, and we define disruptive noise as any targeted noise, you just called it targeted noise, and then you imposed a willfulness requirement or an intentional requirement on the back end. Am I reading the statute right? Yes. It's making noise with the intent of having it heard within the building and making it for the purpose of interfering with what's going on in the building. But you have two different intent requirements. And I think, to be fair, there really are two different intent requirements. If someone is simply making noise with the intent of having it heard within the building, I think there's still a further intent requirement that it has to be for the purpose of disrupting health care. Can you just stop? Why? Why does the state require the second one? That's what I'm puzzled by. And that's what they seize on in saying that creates the underbirth problem. That shows you're targeting a message. And I'm trying to say, why do you have this? What's the reason for the second intent requirement? Well, I mean, I think, and this probably goes back to your original question, is that just as a matter of practicality, if people are intentionally making noise so that it can be heard within the building, and someone comes down, a law enforcement officer says, hey, they can hear what you're saying up there, you're interfering with health care, and the people continue to make that noise, there's obviously an intent on their part to interfere with health care. So I think the statute is drafted in such a way that it's targeting the noise that is the most problematic noise. And that's the noise that is being targeted at the patients directly. It's people directly addressing the patient, not just a passing parade that might be a little bit annoying, a little bit disruptive, but it's a protester on the street yelling directly up to women, targeting them, and essentially confronting them. Let me ask you a question. Let's assume that I have a device outside which permits me to amplify either my voice or something else. First, I have the device amplifying a jackhammer sound. No content, it's just a jackhammer. And we run it for hours on end. Very disruptive. Then I have the same device and I'm shouting slogans, don't do this, you're sacrificing a life, etc., etc. So that seems to be content-based. The other seems to be just noise to disrupt. Is there any difference in your statute as to how these two things should be handled? I have two responses. First of all, the Supreme Court has said that the state doesn't have to address problems that don't exist. So in terms of just a jackhammer noise being amplified, that's not a problem that Maine has ever had to address. But I think the important point to make here is that there's a huge difference in the mind of a person getting health care. It's one thing to be trying to talk to your doctor and trying to get advice and trying to make a big decision and having a jackhammer going on downstairs, which certainly may be a little distracting and may be annoying, but that is an order of magnitude different than having a protester down on the street yelling directly at you trying to engage you in conversation personally while you're trying to engage with a health care provider. That's simply a completely different situation. So it's the content. No, it's not the content, it's the matter in which it's being delivered. And we would say that Hill v. Colorado addresses this situation. In Hill v. Colorado, the Supreme Court said it's not the message that the protesters are trying to convey to the women, it's the confrontational aspect of it. And that the state has a compelling interest in protecting women who are going into a health clinic from being able to avoid this kind of confrontational behavior. It's not the message, it's the direct confrontation. And our view is that... Does that have to be known to the listener? I'm sorry? How would the listener know? Under your statute, if I'm making the loud noise that Snow described with a jackhammer, and it happens that under my breath I'm saying, this will really disrupt their health services, I'm guilty. Correct? If there's a complaint made and we can prove that they were intentionally making the noise... Well, I'm sitting there saying, under my breath, I hope this disrupts health services. But again, there doesn't have to be a complaint made and we have not... I mean, this is a facial challenge. My point only is that the way the statute operates, it doesn't seem to require proof that the listener knows it's targeted. It just seems to require that the person making the noise intends to disrupt. Well, and intend that it be heard inside, I guess, right? As the Attorney General has interpreted the statute, and we've said this in our brief, there has to be actual interference as well. And so, for example, Mr. March complains that he could, in theory, be in violation if he goes out on a Saturday morning and engages in loud protest activity when there are no health services being delivered. The Attorney General, the highest law enforcement official in charge of the statute, the way that she's interpreted the statute, if there's no actual interference with health care, then there's not a violation of the statute. So in a jackhammer situation, if even the person has the actual intent, if there's no actual interference, it's not a violation, no more than if a person was screaming up at the window on a Sunday morning when there's no one there. So you have to prove disruption in every case? Actual disruption? That's our view, is that we have to prove actual interference. And as a matter of practicality, that's going to happen because the way these cases develop, or at least the way Mr. Engel's case developed, is it was complaints from within the facility saying what he is doing is disrupting our health care. Now, if it's not disrupting, then we're not going to get the complaint and there's not going to be an action. But again, yes, we have said in our brief that we would have to show actual disruption. And how do you, and just so I get it, that means you view this statute as identical in form as to the statute ingrained? I'm sorry, the statute ingrained? This is, in your view, no different than a statute that says it's prohibited to willfully use noise in a disruptive manner? I think so, yes. And can you just walk me through the text a little bit and how you read that into the text? Because I'm not seeing it exactly. Well, okay, so I mean, first of all, there's a complaint. There has to be a warning given. The state would have to show that the noise could be heard within the building, that a warning had been given that the person continued making the noise with the intent of interfering with health care services. And then the Attorney General, because it just, it makes sense that there can't be, that there wouldn't be an action brought if there's no actual interference of, for example, a person protesting on a Sunday morning. So the Attorney General interprets the statute as having to show that there actually is not only an intent to interfere, but there's actual interference. I don't know, I fear that might not answer your question, Judge Barrett, but that is the Attorney General's interpretation of the statute. If we moved away from the abortion facility and went to the main medical center and there was a nurse's strike, and the nurse's strike was loud, repeated, and could be heard inside the hospital saying things like, don't get your medical services here. This is a place that does not supply enough nursing staff in order to protect its patients. And they do this in a loud manner. Would the statute operate there? Yes. Yes, it would. And our view is that the statute applies in all kinds of situations. For example, you know, you could see protesters... Well, I wondered if the nurses said, no, we really, it's not our intention to disrupt. It's a second intent. Well, they can certainly say that, but if they have nurses yelling the kinds of things that Judge Stahl was saying, and then you have a police officer coming out and saying to them, look, what you're saying can be heard within the building and you're interfering with the ability of the providers in that building to provide health care services, and the nurses continue on saying the exact same kinds of things at the same volume, then we can infer intent on their part. So the trigger actually comes from people inside the building who have to let an officer know that there is actual interference with delivery of health care. And then it's up to the officer to determine whether there's evidence of intent to disrupt medical care. Not intent for the noise to reach the building, but intent to disrupt medical care. I mean, yes, and if I may finish my answer. So the officer gets a complaint, and of course it has to come from within the building because an officer is not going to know otherwise whether there's interference going on. Gets the complaint, interviews the complainant, takes a look at the situation, decides that it's warranted, gives a warning to the protester. If the activity continues and the officer makes a decision whether the protester is intending to disrupt medical care, referral gets made to the AG's office. The AG's office then makes a further decision about whether the elements have been met. But yes, just like any criminal case, it begins with a complaint from the victim. It's not a criminal case. Well, I'm sorry, like any law enforcement matter, we're relying on getting complaints, and then the officer is verifying the complaint, and the burden is on the state to prove that the statute doesn't require it to operate that way on its face. You're just saying that's in practice how it is. Yes, I mean, that's how it operates. Can I just give you a hypothetical so I understand what the reach of this is? Suppose you have a pro-choice demonstration in front of the clinic, and it's very loud, cheering on the clinic for all the great work it does. You know, don't defund Planned Parenthood. Centers like this are critical, and they're warm. It's loud, and it's too loud for them, and they continue on doing it. Is that protest in violation of the statute? So if there was a pro-choice protest going on, and the people inside the clinic report that this is interfering with our ability to provide health care, and the warning is given to the protesters, and the protesters continue to engage in the behavior, having been warned, then we would infer from that that there is an intent to interfere with health care. So is the way that this is operating, that you're just saying intent doesn't mean something like for the purpose of, or you're saying intent just means I took an action intentionally rather than inadvertently, which had this consequence. And you're saying as long as that's the case, yeah, you're covered by the statute. Yeah, I mean, I think intent, and I think there's cases that say that intent doesn't have to be just your sort of subjective intent. This is what I want to have. Reckless disregard. If you know that what your conduct is going to do is going to result in a specific impact, and you continue to do it, then you can infer intent from that. I have two questions before you sit down. In some ways, it sounds as though the statute is providing an extra defense to the noisemaker, saying, yes, I did make the noise, yes, it went inside, yes, it did interfere. But honest to God, that was never my intention. And that then, the trier, well, the trier of fact could let someone off the hook under those circumstances. Is that one way of understanding this? I think that's a possibility, yes. Okay. Secondly, the officer here, who actually gave the warning to the plaintiff, said it was because of what you said, as though the content of the speech was what led the officer in that as-applied situation. To do what he did. What is your interpretation of whether what the officer is justification? Is that in accord with your policy, or isn't it? So first of all, this is, at least for, it's coming to this court on a facial challenge. But our view is that, and I think what the officer said was, this is in part based on what you said. And I think what the officer was trying to express is that in terms of determining intent, it's not just the volume that you're speaking. Because someone who's walking past, you know, in support of measures to stop global warming, what they're saying may be some evidence of what their intent is. And in Hill versus Colorado, the court said that you can consider that.  So our view is that, I mean, we're not necessarily saying that the officer did or didn't handle this correctly, but it is true that what a person says can be used as evidence of intent. So if you take Judge Barron's hypothetical, equal amount of noise, equal disruption, but it's from a pro-choice rally, do the two situations get dealt with differently? Well, I think what would happen is if, first of all, this pro-choice rally is a completely hypothetical situation. And again, we don't have to legislate for problems that don't exist. But the idea that there's a pro-choice rally going on, and for whatever reason, it's interfering with the health care, in that case, it's probably not the content of what they're saying that's going to determine intent. It's the fact that they've been warned, they've been told that they're interfering, and they continue doing it. So that's what I'm just puzzled over. Given that idea, you also said that there are situations in which somehow that second intent requirement could be a lifesaver for somebody who's continuing to make noise after they've been warned. Well, I was trying to think about what that case would be. I mean, it might be, I don't know, it could be a case in which I made noise, I was warned. The second time I made the noise, I didn't realize it was as loud as the first time. That wouldn't seem to me to raise a content-based problem. But if the idea is that we're looking at whether you support what the clinic's doing or not, that starts to run into some real problems. And I think the reason I answered Judge Lynch's question as possible is because I couldn't right off the bat think of a situation like that. If a person has been warned, what you're doing is interfering with health care, and they continue to engage in the exact same kind of conduct, I think it would be hard for them to argue in front of a fact finder, hey, I really didn't mean to interfere. Now, they can make the argument, and maybe they can convince the fact finder, but our view is that we have pretty good evidence on our side that if they kept doing the exact same thing after being warned, they had an intent to interfere. And I guess that same issue arises in any statute which prohibits disruption with a high intent requirement. Yes. So it's not unique to this. It's not. It's not. Okay. Thank you. Ms. Oliveri. May it please the Court. My name is Kate Oliveri, and I represent the plaintiff appellee, Andrew March. This case presents a straightforward question. Can the government restrict speech on a public sidewalk based on the speaker's intent in making that speech? What makes you think this is a restriction of speech as opposed to a conduct regulation? Well, first off, I think this is a restriction on speech because if we allow states or the government to circumvent speech requirements by calling it noise, you could have all manner of restrictions that, in effect, cover speech. But it's not just noise. It's noise that interrupts. There's a difference, isn't there? No, Your Honor. It's not noise that interrupts. It's noise made with the intent to interfere. Yes. So that would allow the government to accept... No, no, no, no, no. It's noise that has to be heard inside a building, loud enough to be heard inside a building. So that's... In War Against Racism, they don't say, oh, this is a noise restriction, therefore it's speech. They say this is a noise restriction as applied to music. Music is speech. Now we know we're in the First Amendment. But there's no case saying that just any restriction on noise is automatically speech. No, Your Honor. What I'm saying is that, well, noise restrictions still do have to comply with the mandates of the First Amendment. And that's the question of whether you apply O'Brien or you apply a different test. If it's a conduct restriction, you apply O'Brien. So you make sure it complies with the First Amendment, just like any conduct restriction. Well, you cannot conduct... If conduct is... If a conduct restriction is placed at the expressive intent of the conduct, though, it applies under the First Amendment. And what's the evidence here that it is? That it's applied to the intent... That it's directed at the expressive content of the noise as opposed to the effects of the noise. Well, defendants admit this in their briefing when they say that this applies to protesters outside the clinic. They've admitted that in discussing Judge Stahl's example with the nurses, they said, well, what they're saying would be the evidence that they're intending to interfere. If they're saying that specific conduct. And if you allow this idea of calling it noise, you could have noise that is intentionally made with the intent to criticize the government. No, but then it would be clearly aimed at suppressing a message. You're saying that a restriction on noise that is intended to disrupt is targeting a message. What's the message that's being targeted? The message here that's being targeted is they're viewing the intent to interfere with a medical procedure because these pro-life pastors are out there saying... Offering alternatives to the women. No, but anybody who makes noise that intends to disrupt, they're going after that. What's the message that they're attacking? The message is the message that's the intent... The intent to interfere. The purpose of interfering is that message. And what's a case that suggests that's evidence of going after a message? I don't know of a case that suggests that. Because there's Frisbee allows the government to target speech that's targeted and conveys the message to the homeowner, we're after you. Graded says you can go after noise that's trying to disrupt the school, when it's targeting the school. Cox v. Liena says you can go after noise when it's trying to target the court. All of those are ones where they're targeting intentional disruption through noise, targeted at a particular actor, and the court every time says it's fine to regulate that. But the problem here is the distinction between Frisbee and Cary, whereas Frisbee was a blanket ban on picketing. In Cary, there was an exception for labor picketing, and that's the exception we have here. This isn't a noise ordinance that bans all noise. Louder noises, noises made for a longer period of time are allowed to go into the facility. That's true under Graded. Only noises that are willfully done to disrupt in Graded are prohibited, which means loud noises that might be disruptive that were not willfully designed to disrupt are perfectly fine. It's under Broughton just the same way. So what's the problem? The problem here is, first, it comes from the two intent requirements, I think. This isn't just intentionally making noise. This requires that further intent to interfere with a medical procedure. What's wrong with the, yes, are you saying both intent requirements are unconstitutional or only one of them? Only one of them, this further intent requirement. And the problem with that is the way that the... To disrupt or... To interfere or disrupt the two secondary intent requirements. And the problem comes with the reading of the statute, is the defendants are trying to say that you just get this intent by after having been warned, you keep making the noise. But that renders the second intent requirement superfluous. It has no meaning if it's intentionally making noise. It protects people from being unwittingly in violation of the statute. That's what all willfulness requirements do, which is, you know, we know that you make a lot of noise and people heard it inside and that's really bad. But rather than saying immediately you're in violation, we give you a second chance and if you continue to do it and you're really intended to do it, then you're out of luck. What's wrong with that? It just seems protective of the speaker rather than problematic. I believe it allows them to target specific speech that is opposed to the practices within the building. But they're only targeting the speech if it's done in such a way, if it is targeting the speech, that it gets inside the facility. There is no restriction on your speech directly outside of this facility at all. This is noise which is intended to penetrate the structure in order to interrupt the provision of services. Isn't that different? No, Your Honor. And in Reed v. Town of Gilbert, the Supreme Court said there are blatant content-based restrictions that restrict speech or noise based on a specific category, and that was a sign ordinance. But there is also a subtle category of speech, of content-based restrictions that restrict speech based on its function or purpose. And here we're restricting noise based on its function or purpose, the intent to interfere with a medical procedure. And the problem isn't that all, we're not saying all noise should be allowed to go in to the medical facility. The problem isn't that it's always going to be used in a manner that's bad, as the in Hill, the problem with content-based restrictions isn't that they're always used for invidious thought control purposes, it's that they lend themselves to such use. Can I ask you, if this statute had been written so that it said the willful disruption, making noise to willfully disrupt medical services, the willful making of noise to disrupt medical services by making noise so loud it could be heard inside, would that statute be unconstitutional? I think there would still be issues there of looking to the purpose of the, you're looking to the purpose of the person making the noise. But in Cox v. Louisiana, the statute reads, you can't make noise that can be heard by the court for the intention of disrupting the court, and they said that was fine. So what's the problem? I think the problem goes to, and discussed by analogy about Texas v. Johnson and discussed, that case is discussed in RAV, where they say it's okay to do a ban on willfully starting outdoor fires. That is fine, but it's not okay to ban willfully setting a flag, willfully setting a flag on fire for the expressive content. And this statute, unlike- For purposes of desecrating the- For purposes of desecrating the flag. They don't say for purposes of disrupting the flag. Sorry, I meant desecrating the flag. For purposes of destroying the flag would probably be fine. Because you're trying to protect the flag. Just like you're trying to protect the health services from being disrupted. The statute there was problematic because it said for purposes of desecrating it, and the court said that reflects a state interest in promoting a unitary message about the flag, and the state has no business promoting that message. But it was promoting the message of don't destroy the flag. That's the point of the statute. And this is promoting the message of don't disrupt health services. That's okay. My understanding of Texas v. Johnson and the discussion in RAV is that it is not okay to have an ordinance that bans burning the flag for purposes of, to shut down the expressive content that you're trying to say. But the way they knew it is because the statute made the prohibition, I think, turn on desecration. Is that wrong? Yes, no, it did turn on desecration. But this doesn't have anything like that. This has just disruption. But it has the intent requirement. It's not disruption. You have to have the intention to interfere, which is putting a content-based analysis, and it's allowing the state to look at the speech that's being made, and speech out there saying, way to go, women, I want you to go have these health services, shows no intent of interfering with a medical procedure. Whereas the same speech done at the same level saying, I don't want you to have an abortion, shows the intent to interfere with the medical procedure. And we see this in the video evidence, too. In his reply brief, there was video of a woman who was a pro-choice advocate out there yelling, she is not silenced. Where a climate change protest that marches by with dozens of people chanting in unison is not silenced, but the lone unamplified voice of a preacher who is speaking on abortion is silenced. Because that's his intent. Because his intent is to persuade women to avoid abortion. No, his intent is to disrupt. Because he could get his message across by standing in front as he does, and speaking in perhaps an elevated voice. But when he goes a step further, his intent is to disrupt. What's wrong with that? If somebody was standing, as we know, outside the courtroom there shouting and screaming because they don't like what's going on inside here. Right, but if the person was out there shouting and screaming for a reason unrelated to what's going on in here, then that person would still be silenced. Why? Maybe not. We didn't become unconstitutional if we chose to give them a break and say, oh, you must have made a mistake. You didn't realize you were standing in front of a courtroom. Correct. There's nothing wrong with that. So what's the difference? We would treat the person yelling and screaming for purpose of disrupting these proceedings less well than the person yelling and screaming not for that purpose. That seems sensible rather than a First Amendment violation. The problem is that it then allows them to look and to silence. Are there potentially valid ways to enforce this that seem like good ideas? Absolutely. I'm in part troubled by the fact that this is a facial attack. And what you said just suggested that there are ways of enforcing the statute that are valid, and there are ways that are invalid. I was going to ask you a question about whether you have a sort of minor theme argument that because it is likely that the police officer will look at what is actually being said in order to determine that second intent requirement, it's likely that the way the statute will work in most instances is to actually look at the speech. And that's what makes it facially invalid as opposed to a series of as-applied attacks. Yes. If I said that there's a valid way to apply the statute, then I misspoke. What I mean are there circumstances where conduct outside a facility that the statute could cover is conduct that we probably want prohibited. But the problem is, is that as, I mean, Pastor March wasn't just told that it was what he was being said. He was told it's what was being said and specifically the type of speech. He was told that there's language in the Maine Civil Rights Act that allows the government to look at the content of what he is saying in order to silence his speech and determine if he falls under this provision. So absolutely that there's that subcategory, that blanket, a blanket and decibel noise  And what is that language? Apart from the understanding of a Portland police officer, what is the language that is in the statute that specifically directs in all cases you look at the content of the speech? The intent to interfere with the medical procedure. And this is because it allows the government to look at the type of speech and then go on from there. So again, I mean, I, a blanket noise. It just sounds like you're saying that you have to have kind of strict liability noise restrictions. And I just think that would be surprising. No, I don't have a problem with the warning requirement, but something like the decibel requirement in Kovacs v. Cooper. But suppose there was an intent requirement with a decibel requirement. Would that then be unconstitutional because they only wanted to prosecute people who intentionally had too loud a music? That seems strange. But it's not intentionally too loud of music. It's that further intent required where you're looking at the purpose of the person and making the noise. And in Reed v. Town of Gilbert, the Supreme Court said when you bring it to look at this purpose or intent, it's a. So if it's with the purpose for the intention of disrupting the neighborhood, you'd say it's just as bad as this. I see I'm out of time. May I answer your question? If in Ward v. Rock Against Racism, they had a intent requirement so you can't have music above, I don't know what, I don't know sound metrics, but 150 decibels with the intent of disrupting the neighborhood, you'd say that's unconstitutional. Yes, when you're looking at. You have to. I mean, I understand the argument. Because, again, it allows you to look at the content and allows the government to silence an important side of a public debate. OK. Thank you very much. Mr. Taub. So I think I've already used more than three minutes already before. If the court has any questions, I would certainly try to answer them. But I just, I think, want to make. Well, she's just argued that, inevitably, you're going to have to look at the content of the speech in order to determine that second intent requirement. And that's just not true. For example, you could have a person with a drum just repeatedly banging on the drum outside of the clinic, and the officer comes out and says, hey, we're getting all kinds of complaints about this. Suppose they're not using an instrument. Suppose they're speaking. Well, this covers all noise. Whether the noise has a commutative content or not, it applies to all kinds of noise. And some cases, yes. And I will concede that, in some cases, officers are going to be looking at the content. But, again, in Hill, the Supreme Court said that there's nothing unusual about looking at the content to determine intent. Right. In fact, you'd have to use it even for the first intent requirement. The first intent requirement of being able to be heard within the building? Yeah, because to know whether it was inadvertent or intentional, you might look at it. But you don't have to. But it might help to look at the content. That's just endemic in these. It's endemic, and there's nothing wrong with that. And it's typical in the law to look at the content of a communication. And just the one last point I'd like to make, unless the court has questions, is that to look at this from the other side, if we just did a blanket prohibition on noise around a Planned Parenthood clinic, for example, Monument Square is a place for their political demonstrations, we're going to have the opposite kind of lawsuit. We're going to have a lawsuit from demonstrators saying, why can't we hold our demonstration here? There's no evidence that our demonstration is interfering with what's going on at the health care clinic. But why didn't you do it as a noise level or something, a certain noise level with an intention? Well, it sounds simple to have a noise level and a decibel level. But in practice, that's very difficult. There's all different kinds of ways of measuring noise, whether you do it for a sustained period or a peak noise level. You have to filter out the ambient noise. So it's not just as simple as putting up a decibel meter and saying, oh, you're in violation. But the other thing is, it's not all noise that's disruptive. A siren going by, again, is not the same thing as someone yelling, as Mr. Ingalls did, yelling directly at the women about them making a bad decision or targeting them and saying, please come down here, we want to talk to you. Or a good one. It would be better if it's also a good one. If pro-life protesters were downstairs yelling at the women, hey, hey, come down here, we want to tell you about what a great decision you're making, that would be just as disruptive. The fact of the matter is, that just doesn't happen. It doesn't happen. And the fact that the only time that this statute has come into play is because we have an anti-abortion protester, that doesn't mean that this is some kind of content-based restriction. OK, thank you. It was very well argued on both sides. Appreciate it. Thank you.